UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

Hassan Yehia Chokr,

        Defendant.
_____/

Case No. 2:22-mj-30527
Hon. Jonathan J.C. Grey
United States Magistrate Judge

## GOVERNMENT'S BRIEF IN SUPPORT OF DETENTION HEARING

On December 3, 2022, for almost four minutes, defendant Chokr physically possessed and had control over six different firearms, including the three that he tried to purchase at a Dearborn gun store that day. While at the gun store, Chokr said that he would use the firearms for "God's wrath." This was after he spent the morning terrorizing employees, children, and parents at a Jewish synagogue in Bloomfield Hills, by spewing racist and antisemitic threats and yelling "You all are going to die!" and "You're going to pay!" After deciding to purchase an AR15 assault rifle, shotgun, and semi-automatic handgun, Chokr completed and signed an electronic ATF Form 4473. Fortunately, he was denied the purchase after a background check even though Chokr lied in his answers to several of the questions that would determine his eligibility to receive or possess firearms, in violation of 18 U.S.C. § 922(a)(6). In these circumstances, the Court "shall hold" a

1

detention hearing because Chokr's offense is a felony that involves the possession of a firearm, as described in 18 U.S.C. § 3142(f)(1)(E).

## I.     Background

On morning of December 2, 2022, defendant Chokr drove to Temple Beth El in Bloomfield Hills, Michigan. *See* Ex. A, Bloomfield Township P.D. Report. He slowly drove through the parking lot yelling racist and anti-Semitic profanities and threats at parents as they walked their children into the day care center. As one mother dropped walked her daughters through the parking lot, Chokr yelled, "Do you support Israel . . . How dare you . . . You are going to pay . . . Fuck Israel and Jews!" *Id.*  at 12. He repeatedly called an African American security guard the "N" word for "protecting the Jews" and threatened to get out of his car. *Id.* at 11–12. The security guard heard Chokr threaten, "Y'all are going to die!" *Id.* at 11.

After Chokr left Temple Beth El, he went to a gun store in Dearborn. There, Chokr handled six different firearms for a total of almost four minutes. He held each firearm in his hands, and at times pointed it and pulled the trigger. In these moments, he had complete possession and control over the firearms.



*Fig. 1: Chokr pointing a semi-automatic handgun.*



*Fig. 2: Chokr handling an AR15-style assault rifle.*



*Fig.3: Chokr handling a Mac-10 machine gun.*



*Fig. 4: Chokr pointing a 12-gauge shotgun.*

3

 

*Fig. 5: Chokr handling a pump-action shotgun*    *Fig. 6: Chokr pointing an AK47-style assault rifle.*

Chokr ultimately decided to purchase the semi-automatic handgun, AR-15 assault rifle, and pump-action shotgun. (Figs. 1, 2, and 4). In completing the required ATF Form 4473, Chokr answered "No" to several questions that would determine his eligibility to receive or possess a firearm. Specifically, he lied by indicating that he was not under information in any court for a felony, that he has never been convicted of a felony, and that he has never been committed to a mental institution. *See* Ex. B, ATF Form 4473. In truth, Chokr is pending trial for felonious assault and assaulting, resisting, and obstructing a police officer in Wayne County Third Circuit Court. *See* Ex. C, 3rd Cir. Docket. He also was convicted of a felony offense in September 2017. *See* Ex. D, Certified Copy of

Conviction. Finally, Chokr previously was committed to a mental institution under a mental health order issued by the Wayne County Probate Court. *See* Ex. E, Mental Health Petition Docket. While waiting for the results of the background check, Chokr stated, "It ain't a fair fight out here. I'm going to even the score. I'm going even the playing field real soon brothers, real soon." *See* 771030.mp4 at 11:24:15 (previously provided to the Court). A witness at the gun store also heard Chokr say he would use the guns for "God's wrath." *See* Ex. F, Dearborn PD Report (redacted) at 4. Fortunately, Chokr was denied the purchase after a background check. This enraged Chokr who threatened to break into the store and "get his guns." *Id.* at 4. He also posted a picture of the denial slip on social media with the words, "Time to bust out the drywall. Ouzzie time." *Id.* at 8.

**II. The Government is entitled to a detention hearing because Chokr's offense involves the possession of a firearm.**

The Bail Reform Act of 1984 ("Bail Reform Act) sets forth broad categories of cases where courts "shall hold" detention hearings. The first category involves cases where the government moves for detention and the case falls within the kinds of offenses listed in § 3142(f)(1). These types of crimes involve particularly dangerous activity, including a felony offense that "involves the possession or use of a firearm . . . " 18 U.S.C. § 3142(f)(1)(E). Here, the government has moved for detention and is entitled to a detention hearing because Chokr's offense is a felony that involves the possession of a firearm.

5

### A. The Court should consider the underlying conduct of the offense in determining whether it "involves" the possession or use of a firearm.

The plain language of § 3142(f)(1)(E) does not require that the government charge the defendant with an offense that includes as an element the possession or use of a firearm. Rather, the offense must only *involve* the use of the firearm. Congress's use of the phrase "that involves," rather than the phrase "has an element," makes clear that the Court is not limited to the elements of the charged crime. When looking at the language of a statute, the court should examine "the plain meaning of its words." ." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017) as cited in *United States v Bedford*, 914 F.3d 422 (6th Cir. 2019). "By using the phrase 'that involves' in this subsection, Congress clearly intended for courts to pierce the veil of the charged offense and consider the conduct underlying the offense, including who was harmed and whether any firearms were used [or possessed] in the course of committing the offense." *United States v. Watkins*, 940 F.3d 152, 160 (2d Cir. 2019). The Court must hold a detention hearing where the government proves by a preponderance of the evidence that the offense involves a firearm. *Id*. at 165.

Judges in this district have recently employed the "offense-specific" inquiry adopted in *Watkins* when determining whether an offense involves the possession or use of a firearm under § 3142(f)(1)(E). For example, in *United States v. Clark*,

6

Judge Hood determined that a defendant charged with a single count of felon in possession of ammunition was eligible for a detention hearing even though the charged offense did not require proof of the possession or use of a firearm. (22-cr-20041 ECF No. 26, PageID.89) (E.D. Mich. April 5, 2022). In reaching the same conclusion as Magistrate Judge Stafford, Judge Hood considered that "the allegations in this case are based on the belief that Defendant was in possession of a firearm . . . during the underlying incident in which he allegedly possessed the ammunition when he was a convicted felon." (*Id.* at PageID.96).

In *United States v. Reginald Hunter*, Judge Davis also found the *Watkins* reasoning persuasive and held that "the conduct giving rise to the offense charged should inform its decision about whether the possession or use of a firearm is involved." (22-cr-30177 ECF No. 31, PageID.109) (E.D. Mich. May 23, 2022). Defendant Hunter was charged with one count of conspiracy to commit murder for hire. In support of its request for a detention hearing, the government proffered that during the timeframe of the conspiracy, law enforcement discovered a rifle at Hunter's feet during a traffic stop. (*Id.* at PageID.110). The government also presented evidence that the rifle had some connection to the person who hired the defendant to commit murder. (*Id.* at PageID.111). Judge considered this underlying conduct and determined that the government was entitled to a detention hearing.

Other district courts have also looked to the underlying conduct in considering whether to order a detention hearing under § 3142(f)(1)(E). In *United States v. Sentell*, 2013 WL 4781091 (W.D.N.C. September 6, 2013), the district judge found that a detention hearing was warranted because the offense involved the possession or use of a firearm. *Sentell*, at *1. There, the defendant was charged with making a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). The government presented evidence about the defendant's past history related to guns and violence, including conduct unrelated to the charged offense, his prior mental health order, and his subsequent attempts to purchase firearms. *Id*. The district judge found that the defendant's offense involved the possession or use of a firearm. *Id.*

Like the defendants in *Hunter* and *Clark*, Chokr is charged with an offense that does not include possession or use of a firearm as an element of the offense. But, the underlying conduct related to the charged offense undoubtedly involves a firearm. Chokr actually possessed firearms in his quest to illegally purchase them, and he attempted to possess firearms by lying. Both of these acts "involve" the possession of a firearm. At the gun store, the employee handed Chokr six different firearms so that Chokr could physically possess and handle them. When each of those firearms was in Chokr's hands, he had actual possession of them in that he had direct control over them, and knew he had that control. *See* Sixth Circuit

8

Pattern Criminal Jury Instruction, 2.10A. Chokr physically possessed those firearms for almost four minutes. He walked around with the 12-gauge shotgun and pointed it around in a circle. *See* 771030.mp4 at 11:09:07–25. Even if the defendant's possession of the guns as a whole, or individually, was brief, he had full control over them. *See U.S. v. Burroughs*, 465 Fed. Appx. 530, 540 (6th Cir. 2012) (finding "no authority that would warrant reversal based on the duration of his possession of the firearms"). Nor does it matter that the defendant did not have the gun store owner's permission to leave with the guns. *See* ECF No. 12, PageID.32. The defendant does not need legal authority or ownership of the firearms to possess and have control over them. *United States v. Williams*, 223 Fed. Appx. 441, 444 (6th Cir. 2007).

*United States v. Gaston*, 2021 WL 1170201 (N.D. Ind. 2021), cited by the defendant, is inapposite. There, the defendant argued that because "acquisition" as used in 18 U.S.C. § 922(a)(6) is not the same as "possession" as used in § 3142(f)(1)(E), the government was not entitled to a detention hearing. The court did not resolve the issue of whether to consider the underlying conduct in determining whether it involved a firearm because "acquisition" encompasses "possession." Because Gaston successfully acquired firearms and thereby possessed them, a detention hearing was proper without even considering the underlying conduct. Here, Chokr has agreed during the prior hearing that the Court

may properly pierce the veil of the offense charged and consider the underlying conduct. As described above, that underlying conduct consists of Chokr's actual possession of firearms.

Even if Chokr had never physically possessed the firearms, his act of lying on the ATF Form 4473 in his attempt to purchase firearms is an offense that "involves" the possession of a firearm. *See United States v. Sentell*, 2013 WL 4781091, at * (W.D.N.C. 2013) (finding that the offense of making a false statement in connection with the acquisition of a firearm involved the possession and/or use of a firearm). Here, Chokr threatened "Y'all are gonna die" at a Jewish synagogue. After that, he went to a gun store to purchase firearms that he said would be used for "God's wrath" and "to even the score." In attempting to illegally purchase firearms so that he could possess and use them, his offense of making false statements regarding his eligibility to do so "involves" the possession and/or use of firearms.

### B. The defendant possessed and had control over the firearms.

The defendant, in his memorandum, argues that Chokr was merely "touching" the firearms which is insufficient to establish possession. (ECF No. 12, PageID.30–31). The problem with Chokr's argument is that he did more than "touch" the firearms so the cases that he cites are not applicable. In *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984), the court reversed the district court's denial

of the defendant's motion for acquittal because the government failed to prove constructive possession and only presented evidence that Beverly must have touched the gun at some point. Here, Chokr did not constructively possess the firearms, nor did he merely touch them. He had actual physical possession of and control over six different firearms for almost four minutes.

In *United States v. Wilson*, 922 F.2d 1991 (7th Cir. 1991), the court, in finding the evidence sufficient to support the defendant's conviction, found that while merely touching the firearm would not equate to possession, a jury could conclude based on the evidence that Wilson had control over the apartment where the gun was found. Like the defendant in *Wilson*, Chokr did not merely touch the firearms at the guns store. He possessed them and had control over them.

In *United States v. Williams*, 28 Fed. Appx. 486 (9th Cir. 2002), the court found error in the district court's denial a defense instruction that would have covered the defense theory of the case. There, the defendant presented evidence that he touched the bullets when he picked them up, gave them to his fiancé and told her to get rid of them. Again, in this case, Chokr did not momentarily possess the firearms, nor was his possession innocent or well-meaning like the defendant in *Williams*. Chokr possessed the firearms unlawfully as a felon and intended to lie in order to make his possession for permanent.

Finally, the defendant misrepresents the holding in *Teemer*. Contrary to what was represented in Chokr's brief, the court there found that there should be no jury instruction that would require a jury to acquit in situations involving innocent contact. *United States v. Teemer*, 394 F.3d 59, 65 (1st Cir. 2005) ("Assuming that Teemer moved the gun to sit down and did nothing else . . . we think that the jury was still entitled—but not required—to conclude that he had broken the law."). In connection with the false statements he made in his attempt to purchase an assault rifle, semi-automatic handgun, and shotgun, Chokr possessed multiple firearms. His possession was not transitory or innocent; it was with ill-intent. In doing so, his offense clearly "involves" the possession of a firearm and a detention hearing must be ordered.

### III. Conclusion

The defendant possessed firearms in his quest to unlawfully acquire them by lying. This conduct that culminated in the charged offense of making a false statement during the attempted acquisition of a firearm involved the possession of firearm so the Court should hold a detention hearing.

                                  Respectfully Submitted,

                                  DAWN N. ISON
                                  United States Attorney

                                  FRANCES LEE CARLSON
                                  Assistant United States Attorney
                                  211 W. Fort Street, Suite 2001
                                  Detroit, MI  48226
                                  Phone:  (313) 226-9696
                                  frances.carlson@usdoj.gov
                                  P62624

Dated: <u>January 12, 2023</u>

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

                                                                            /s/ Frances Lee Carlson
                                                                            FRANCES LEE CARLSON
                                                                            Assistant United States Attorney
                                                                            211 W. Fort Street, Suite 2001
                                                                            Detroit, MI  48226
                                                                            Phone:  (313) 226-9696
                                                                            frances.carlson@usdoj.gov